# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>DARIUS LATRELL KING,<br><br>         Defendant. | Case No.: 17cr679-MMA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>[Doc. No. 20] |

  On February 26, 2017, San Diego Police Department Gang Suppression Unit officers conducted a probation compliance search of the residence located at 141 29th Street in the Grant Hill neighborhood of San Diego, which led to the warrantless arrest of Defendant Darius Latrell King. Defendant is now charged in a single-count Indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, section 924(d)(1). *See* Doc. No. 13. Defendant moves to suppress all evidence seized and statements made during (1) the search of the residence; (2) his arrest; and (3) his post-arrest interrogation. *See* Doc. No. 20. The government filed an opposition to the motion, and Defendant replied. *See* Doc. Nos. 23, 25. The Court held an evidentiary hearing during which the government presented testimonial evidence from an officer involved in the residential search. *See* Doc. Nos. 27-29. After considering the parties'

1

briefs, the oral arguments of counsel, and the documentary and testimonial evidence, the Court **DENIES** Defendant's motion to suppress.

# BACKGROUND[1]

Defendant is a convicted felon and a documented West Coast Crips gang member. Defendant purports to be Patrice Shell's husband. In June 2016, Shell was convicted of assault and sentenced to a three-year term of probation.[2] The conditions of Shell's probation include the following warrantless, suspicionless search condition:

> Submit person, vehicle, residence, property, personal effects, computers, and recordable media to search at any time with or without a warrant, and with or without reasonable cause, when required by P.O. [probation officer] or law enforcement officer.

Gov. Ex. 1.

On February 26, 2017, San Diego Police Department ("SDPD") Officers Montoya and Arreola were on patrol and assigned to the Gang Suppression Team. At approximately 3:00 p.m., the officers responded to the residence located at 141 29th Street in San Diego. A vehicle driven and rented by Patrice Shell was parked in the driveway of the residence, blocking the pedestrian sidewalk. The officers stopped, and advised Shell that the vehicle was parked illegally. Officer Arreola recognized Shell from previous field contact, and knew she was serving a term of probation. Shell recognized Officer Arreola, and confirmed that she was still on probation. Shell also advised the officers that her husband Darius King was inside the residence.

---

[1] The following facts are taken from the parties' briefs, the officers' reports and body-cam video footage, as well as the testimony of Officer Arreola during the evidentiary hearing.

[2] Specifically, Shell was convicted of violating California Penal Code § 245(a)(4), assault with a deadly weapon or by force likely to produce great bodily injury, which provides: "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." Cal. Penal Code § 245(a)(4).

2

Shell complained that she needed to use the bathroom, attempted to enter the residence, and was called back by the officers. While officers were interviewing the vehicle's passenger, Shell again attempted to enter the residence. The officers called out for her to stop and Shell proceeded to enter. An officer prevented her from going any further inside the residence and placed her in handcuffs. The officers seated Shell near their police cruiser, and confirmed that she had a bedroom inside the residence. The officers asked if she would consent to a search of her room. Shell refused to consent.

After confirming that Shell was on probation and subject to a search condition waiving her Fourth Amendment rights, the officers ordered all individuals inside the residence to exit. Shell's grandmother, who was present and exited the residence, advised the officers that Defendant had left out of the back of the residence. The officers proceeded to conduct a search of Shell's bedroom. During the search, the officers collected several pieces of mail that belonged to both Shell and Defendant, as well as several photographs that appeared to depict both Shell and Defendant. The officers found a Ruger .380 caliber handgun bearing serial number 377-6667 (the "firearm"), hidden in a dresser drawer inside Shell's bedroom. The firearm was loaded with four rounds. The officers arrested Shell on charges of being a felon in possession of a firearm and a felon in possession of ammunition.

Meanwhile, Officers Brou and Stewart located Defendant walking down the street a few blocks away from Shell's residence. The officers handcuffed Defendant and placed him in the back of their patrol vehicle. The officers proceeded to run a records check on Defendant. The officers brought Defendant in for questioning regarding the firearm. Shell was also interviewed, denied ownership of the firearm, and stated she did not recognize it. She confirmed that she lived in the bedroom with Defendant, she was in a relationship with Defendant, and he had slept over the night before.

Defendant was advised of his *Miranda* rights and agreed to make a statement. Defendant admitted that the gun was his. He stated he found it two weeks earlier and had

intended to sell it.  Defendant was arrested on charges of being a felon in possession of a firearm and a felon in possession of ammunition.

## DISCUSSION

Defendant moves to suppress all evidence seized from Shell's residence, as well as his post-arrest statements.  Defendant argues that the officers' warrantless search of Shell's residence violated his Fourth Amendment rights.  Defendant further asserts that the government has not demonstrated that his warrantless arrest was supported by probable cause, and therefore his post-arrest statements must be suppressed as fruit of the poisonous tree.  In the alternative, Defendant argues that his post-arrest statements were involuntary.

### 1. *Warrantless Search*

As an initial matter, the parties disagree regarding Defendant's reasonable expectation of privacy in Shell's residence.  The government contends that Defendant lacks standing to contest the search of Shell's residence because he was merely an overnight guest.

A defendant bears the burden of establishing, under the totality of the circumstances, that the search violated his legitimate expectation of privacy in the place searched or the things seized.  *Rakas v. Illinois*, 439 U.S. 128 (1978).  Because Fourth Amendment rights are personal and may not be vicariously asserted, *see id.* at 133, as a general rule, only the owner of the property or an individual with a legitimate privacy interest in the property may challenge an allegedly illegal search.  *See United States v. Broadhurst*, 805 F.2d 849, 851-52 (9th Cir. 1986); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Under Ninth Circuit law, Defendant has standing to assert that the search of Shell's residence violated the Fourth Amendment by virtue of his status as an overnight guest there.  *See United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000) (citing *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990)); *see also Olson*, 495 U.S. at 96 (holding that "status as an overnight guest is alone enough" to establish standing to assert a

violation of the search of a host's home).  Furthermore, based on the personal effects found in Shell's room, and Defendant's status as her husband, he was likely more than a mere overnight guest.

With respect to the validity of the search, Defendant asserts that the government fails to demonstrate that the officers were aware of Shell's probation waiver prior to initiating the search of the residence; that Shell validly waived her Fourth Amendment rights as a condition of her probation; or that reasonable suspicion existed to conduct the search.

The Fourth Amendment prohibits unreasonable searches.  Generally, a search conducted without a warrant issued upon a showing of probable cause is per se unreasonable.  *See Katz v. United States*, 389 U.S. 347, 356-57 (1967).  However, under *United States v. Knights*, 534 U.S. 112, 122 (2001), a warrantless search of a probationer, "supported by reasonable suspicion and authorized by a condition of probation, [i]s reasonable within the meaning of the Fourth Amendment."  Going one step further, the Ninth Circuit held in *United States v. King* that a warrantless and "suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment."  736 F.3d 805, 810 (9th Cir. 2013).

Like the defendant in *King*, a condition of Shell's probation agreement expressly authorized a warrantless, suspicionless search of her residence.  Defendant argues that the government has failed to show that Shell validly waived her Fourth Amendment rights as a condition of her probation, however, the record indicates otherwise.  Shell entered into a probation agreement before a state court judge, in open court, as indicated on the agreement itself.  The language of the search condition is clear and unambiguous – Shell's probation officer and any other law enforcement officer would be permitted to conduct a warrantless, suspicionless search of her residence, vehicle, etc.  The fact that Shell thought only her probation officer could search her residence does not invalidate the search condition; it merely displays her apparent ignorance of the circumstances of her release.

With a valid search condition in place, the officers did not require reasonable suspicion under *King* to conduct the search of Shell's residence. The defendant in *King* was on probation for willful infliction of corporal injury on a cohabitant, which the Ninth Circuit considered a "violent felony," justifying a suspicionless search condition. Here, Shell was on probation for assault with a deadly weapon or by force likely to produce great bodily injury. This qualifies as a violent felony, as that term was used by the Ninth Circuit in *King*, and therefore would fall within the category of felonies that warrant suspicionless searches.

The officers conducted the search of Shell's residence in a reasonable fashion, within the scope of a valid probation search condition. Under these circumstances, the warrantless search of Shell's bedroom was reasonable under the Fourth Amendment and the evidence seized during the search is not subject to suppression.

### 2. *Warrantless Arrest*

Defendant argues that the government has failed to demonstrate the arresting officers had probable cause to arrest him without a warrant. Defendant asserts that the government fails to present any reports or affidavits from the arresting officers, Officers Brou and Stewart. As such, Defendant argues that the officers' basis for probable cause to arrest Defendant has to be inferred from the body-cam footage, which is inconclusive.

"The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (quoting *United States v. Bernard*, 623 F.2d 551, 559 (1980)).

Defendant is correct that in this case, the record is not clear regarding the precise facts Officers Brou and Stewart personally knew at the time that they detained him. However, "probable cause may be based on the collective knowledge of officers at the scene of an arrest." *United States v. Sandoval-Venegas*, 292 F.3d 1101, 1105 (9th Cir.

2002) (citing *Dubner v. City and County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001)). "The accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause. In such situations, a probable cause determination is based on the collective knowledge of the law enforcement personnel." *Jensen*, 425 F.3d at 704 (internal citations omitted). "Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007); *see also United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990) (citing *Bernard*)) ("[W]hen there has been communication among agents, probable cause can rest upon the investigating agents' 'collective knowledge.'"); *see also Sandoval-Venegas*, 292 F.3d at 1105-06.

      Taking into consideration the knowledge of the officers at Shell's residence and the arresting officers, the Court finds Officers Brou and Stewart had probable cause to arrest Defendant. The officers involved in detaining Shell, securing the residence, searching the residence, and apprehending Defendant, were members of the Gang Suppression Unit working together during the investigation. Officer Arreola confirmed that the officers present at the residence were communicating with Officers Brou and Stewart over the radio to find and apprehend Defendant, after the officers found the firearm in Shell's dresser drawer. *See, e.g., United States v. Newman*, 265 F. Supp. 2d 1100, 1106-07 (D. Ariz. 2003) ("The officer involved in a stop is not required to be personally aware of all the facts justifying the intrusion upon the defendant's Fourth Amendment rights. It suffices if the officer, aware of such facts, relays his reasonable suspicion to the officer effecting the Terry stop, who may then rely upon it.").

      By the time officers at the residence contacted Officers Brou and Stewart, Shell had advised the officers that Defendant was her husband, and she thought him to be

inside the residence. The officers knew Defendant to be a documented gang member. The officers had observed pictures of Defendant in Shell's bedroom. Officers had retrieved Defendant's criminal record in the county system, which indicated he had prior felony convictions and arrests for weapons charges. The officers found mail addressed to Defendant in Shell's bedroom, as well as the keys to Defendant's vehicle, which was parked in front of the residence. When Defendant did not exit the front of the residence, Shell's grandmother indicated that Defendant had left out of the back of the house. Defendant was not inside the residence when the officers entered to secure the premises and conduct the search of Shell's bedroom. *See United States v. Fuentes*, 105 F.3d 487, 490 (9th Cir. 1997) (stating "flight together with other evidence gave rise to probable cause").

In light of the facts and totality of circumstances set forth above, the Court concludes that the collective knowledge of the officers supported probable cause for Defendant's warrantless arrest. As such, Defendant's post-arrest statements are not subject to suppression on this basis.

### 3. Post-Arrest Statements

Defendant moves to suppress his post-arrest, post-*Miranda* statements as involuntary. Defendant argues that the officers presented him with a choice: to confess or Shell would be charged with possession of the firearm. Defendant claims that this threat overcame his free will, making his statements involuntary.

"In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir.2002) (citation and internal quotation marks omitted); *see also Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003). The totality of the circumstances include: the crucial element of police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity;

education; physical condition; and mental health. *Taylor v. Maddox*, 366 F.3d 992, 1016 (9th Cir. 2004).

Here, Defendant has multiple previous encounters with law enforcement. As such, he is well-seasoned to the procedures and vagaries of the system, including his rights, which he voluntarily waived. Defendant was not mistreated or placed at physical risk at any time. The post-arrest interrogation lasted approximately 25 minutes, which is not overly long or grueling. The detective who conducted the interview was relaxed and cordial. He recorded some booking information, and then read Defendant his *Miranda* rights. The detective did not threaten Defendant. Defendant asked the detective what was happening, and the detective advised him that Shell had been interviewed and disclaimed the firearm. The detective told Defendant that Shell might be held responsible for possessing the firearm. Defendant then admitted that the firearm belonged to him. Defendant stated that he found the firearm while he was out walking several weeks prior, that he had intended to sell it, and that it did not belong to Shell. Only after Defendant made these admissions did he very briefly become teary and upset. He almost immediately collected himself, and went back to having a cordial conversation with the detective. Defendant admitted that he hid the firearm in a specific dresser drawer, because it contained clothing that Shell was not using at that time.

Because neither the duration nor the conditions of the interview support a finding of involuntariness, the Court's only remaining concern is Defendant's overall mental condition at the time. The Ninth Circuit has explained that as interrogators have moved "away from physical coercion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus." *United States v. Preston*, 751 F.3d 1008, 1023 (9th Cir. 2014) (en banc). In this case, as indicated, Defendant became upset briefly, but not due to the detective's behavior. Moreover, Defendant rebounded, remained calm and coherent, and participated in a respectful conversation with the detective. The video recording of the interrogation is overwhelming proof that Defendant's statements were voluntarily made.

In sum, there are no facts from which the Court can conclude that Defendant's will was overborne by intimidation, coercion, or deception. As such, Defendant's post-arrest statements are not subject to suppression.

## Conclusion

Based on the foregoing, the Court **DENIES** Defendant's motion to suppress.

**IT IS SO ORDERED**.

DATE: August 7, 2017

HON. MICHAEL M. ANELLO
United States District Judge